[No. G043815. Fourth Dist., Div. Three. June 29, 2011.]

MISSION VIEJO EMERGENCY MEDICAL ASSOCIATES et al., Plaintiffs and Respondents, v.
BETA HEALTHCARE GROUP et al., Defendants and Appellants.

1148

## Counsel

Lewis Brisbois Bisgaard & Smith, Lane J. Ashley and Raul L. Martinez for Defendants and Appellants.

Shernoff Bidart Echeverria, Michael J. Bidart, Ricardo Echeverria, Gregory L. Bentley; The Ehrlich Law Firm and Jeffrey Isaac Ehrlich for Plaintiffs and Respondents.

## Opinion

**MOORE, J.**—Plaintiffs Mission Viejo Emergency Medical Associates (MVEMA) and 12 physicians who are partners in MVEMA, sued defendants Health Providers Insurance Reciprocal, RRG (HealthPro), and Beta Healthcare Group (Beta) for breach of the duty of good faith and fair dealing, breach of contract, and intentional and negligent infliction of emotional distress. Defendants moved to compel arbitration based on an arbitration provision in the insurance contract between the parties. The trial court denied the motion, ruling that the arbitration provision was unenforceable because it was not disclosed in the application for the policy. Defendants argue this was error, and we agree. The arbitration provision was clearly stated in the policy, and no provision of law requires disclosing an arbitration provision in an application for this type of insurance. We therefore reverse and direct the trial court to enter a new order granting defendants' motion to compel arbitration.

## I

## FACTS

*The Parties and Insurance Policy*

MVEMA is a general partnership with its principal place of business in Mission Viejo. (MVEMA and its partner physicians are collectively referred to as plaintiffs.) HealthPro is a risk retention group[1] domiciled in Hawaii which does business in California as a reciprocal insurer. It is a subsidiary of Beta, a California joint powers authority.[2] (HealthPro and Beta are collectively referred to as defendants.)

Beginning in January 2002 and renewing in 2003 and 2004, HealthPro issued professional liability insurance policies to plaintiffs. These policies were apparently obtained through a broker, James Murphy of Seaport Insurance Services. In all three policies, the table of contents indicates a section of the policy entitled "Arbitration of Disputes with Us."

The 2004 provision reads as follows: "ARBITRATION OF DISPUTES WITH US. Any dispute arising out of this policy will be submitted to and settled by arbitration in San Francisco, California. The arbitration and discovery process will be governed by the California Arbitration Act, Section 1280, et seq. of the Code of Civil Procedure, except to the extent that it is inconsistent with this Section. You and We waive the right to court remedies, including a jury trial.

"In all such arbitrations the terms, conditions and exclusions of this policy shall be construed in an even-handed fashion in the manner most consistent with the relevant terms, conditions and exclusions of this policy.

"In any arbitration, one Arbitrator will be chosen by You, the other by Us, and a Neutral Arbitrator will be chosen by the mutual agreement of the two

---

[1] A risk retention group is a corporation or other entity organized primarily for the purpose of sharing liability exposure among the group's members. (See Ins. Code, § 130, subd. (k).) In short, it is a liability insurance company owned by its members.

[2] "A Risk Management [joint powers authority] is a government-regulated public entity formed by two or more public agencies[—]the State of California, cities, counties, schools districts and special districts[—]which pool their assets to promote risk control and pay claims against member entities." (California Association of Joint Powers Authorities, What is a Risk Management JPA? <http://www.cajpa.org/AboutUs/Pages/What%20is%20a%20Risk%20Management%20JPA.aspx> [as of June 29, 2011].) According to Beta's Web site, its status as a joint powers authority "enables district, county, city, and nonprofit healthcare facilities to self-insure their liability claims and losses by pooling risks among similar healthcare facilities." (Beta Healthcare Group, Member Facilities and Medical Groups: A California JPA <http://www.betahg.com/about/m_jpa.asp> [as of June 29, 2011].)

Arbitrators before they enter into arbitration. If any party should fail to choose an Arbitrator within thirty (30) days following a written request by the other party to do so, the requesting party may choose two Arbitrators.

"Each party will present its case to the Arbitrators within thirty (30) days following the date of appointment of the Neutral Arbitrator. The Neutral Arbitrator shall be the judge of the relevance of the evidence offered and is not required to follow the strict rules of evidence. The decision of the Arbitrators chosen by the parties shall be final and binding on the parties; but, if these Arbitrators fail to agree, the decision of the majority of the Arbitrators shall be final and binding upon the parties. The Arbitrators shall be limited to the remedies that could be awarded by the Superior Court of the State of California. Judgment upon the final decision of the Arbitrators may be entered in any court of competent jurisdiction.

"Each party shall bear the expense of its own Arbitrator, and shall jointly and equally bear with the other the expense of the Neutral Arbitrator and of the arbitration. In the event that the two Arbitrators are chosen by one party, as provided above, the expense of the Arbitrators and the arbitration shall be equally divided between the parties.

"The Arbitrators shall have no authority to review any matter as to which this policy grants Us sole discretion, including but not limited to the cost and terms of any extended reporting period. No Insured may arbitrate, or contest in court, any such exercise of discretion." (Underscoring omitted.)

The 2004 arbitration provision was changed somewhat from the 2002 and 2003 versions, which were identical to each other. As pertinent here, the venue was changed from "any mutually agreed upon location" to San Francisco; the new provision shifted the cost of the neutral arbitrator from HealthPro to an equal split between the parties; and the new provision added the final paragraph regarding the nonreviewability of discretionary decisions by HealthPro.

*The Malpractice Suit*

On September 12, 2004, Joey Crumes went to the emergency medicine department at Mission Hospital Regional Medical Center complaining of a headache. He was treated by Dr. Andrew Lawson, a partner in MVEMA. Crumes was released after a CT scan revealed no pathology. On September 18, Crumes returned to the hospital in a semiconscious state. He underwent a craniotomy and suffered a stroke thereafter. The stroke was allegedly caused by a brain infection that had been present and went undiagnosed during the September 12 visit. He was in a prolonged coma and was eventually transferred to a skilled nursing facility.

In December 2005, Crumes and his wife filed a medical malpractice lawsuit against multiple parties, including Lawson and MVEMA. Defendants' liability limit as to this claim was $2 million. Representation was provided under the policy's terms. Unsurprisingly, there is disagreement as to how the Crumes litigation played out. According to plaintiffs, HealthPro failed to settle the case, and according to defendants, MVEMA and Lawson refused to settle. The case went to trial, and the jury awarded Crumes a judgment in excess of $11.7 million. The case settled in 2008 for $5.3 million. Defendants paid the policy limits of $2 million toward the settlement.

*The Instant Lawsuit and Motion to Compel Arbitration*

In February 2010, plaintiffs filed the instant suit against defendants. The complaint alleged causes of action for breach of the duty of good faith and fair dealing, breach of contract, reckless infliction of severe emotional distress, and intentional infliction of emotional distress.

Defendants moved to compel arbitration. In support of the motion, defendants offered the declarations of R. Corey Grove, vice-president of underwriting and client services for Beta, and Hellar-Ann Hancock, defendants' counsel, and the 2002–2004 policies issued by HealthPro to MVEMA. Plaintiffs opposed the motion, relying on the declaration of Dr. Robert Winokur, MVEMA's managing partner. He testified that none of the application forms he filled out mentioned arbitration and that no one informed him that the HealthPro policies would include an arbitration clause. He stated he was unaware of the arbitration clause until the instant lawsuit was filed. In reply, defendants argued that irrespective of Dr. Winokur's professed lack of knowledge of the arbitration provision in the policy, MVEMA and its partners had a duty to read the policy, and were therefore bound by its provisions, including the arbitration clause.

The court took the motion under submission after a hearing. In due course, the court denied defendants' motion, ruling that because the arbitration clauses were never mentioned in the applications for the policies, "plaintiffs did not knowingly and voluntarily waive their right to a jury trial and consent to binding arbitration." The court reasoned that once the first policy was issued in 2002, it was reasonably foreseeable that the insured would not notice that the subsequent policies also contained arbitration clauses.

Defendants timely filed the instant appeal pursuant to Code of Civil Procedure section 1294.[3]

---

[3] Subsequent statutory references are to the Code of Civil Procedure unless otherwise indicated.

## II

## DISCUSSION

*Relevant Law and Standard of Review*

Section 1281.2 requires a court to order arbitration "if it determines that an agreement to arbitrate . . . exists . . . ." (§ 1281.2.) While MVEMA argues that "the trial court's determination of the factual evidence is reviewed under the substantial evidence standard," where, as here, the evidence is undisputed, appellate review of the determination of the enforceability of an arbitration agreement is de novo. (*Flores v. Transamerica HomeFirst, Inc.* (2001) 93 Cal.App.4th 846, 851 [113 Cal.Rptr.2d 376].) We use general principles of California contract law to determine the enforceability of the arbitration agreement. (*Kleveland v. Chicago Title Ins. Co.* (2006) 141 Cal.App.4th 761, 764 [46 Cal.Rptr.3d 314].)

■ California has a strong public policy in favor of arbitration as an expeditious and cost-effective way of resolving disputes. (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 9 [10 Cal.Rptr.2d 183, 832 P.2d 899].) Even so, parties can only be compelled to arbitrate when they have agreed to do so. (*Westra v. Marcus & Millichap Real Estate Investment Brokerage Co., Inc.* (2005) 129 Cal.App.4th 759, 763 [28 Cal.Rptr.3d 752].) "The strong public policy in favor of arbitration does not extend to those who are not parties to an arbitration agreement, and a party cannot be compelled to arbitrate a dispute that he has not agreed to resolve by arbitration. [Citation.]" (*Benasra v. Marciano* (2001) 92 Cal.App.4th 987, 990 [112 Cal.Rptr.2d 358]; see also § 1281 [right to arbitration depends on contract].)

■ In *Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394 [58 Cal.Rptr.2d 875, 926 P.2d 1061] (*Rosenthal*), the California Supreme Court stated, "[W]hen a petition to compel arbitration is filed and accompanied by prima facie evidence of a written agreement to arbitrate the controversy, the court itself must determine whether the agreement exists . . . . Because the existence of the agreement is a statutory prerequisite to granting the petition, the petitioner bears the burden of proving its existence by a preponderance of the evidence." (*Id.* at p. 413; see also *Hotels Nevada v. L.A. Pacific Center, Inc.* (2006) 144 Cal.App.4th 754, 761–762 [50 Cal.Rptr.3d 700] [enforceability determined in manner provided by law for the hearing of motions].)

" 'Prima facie evidence is that degree of evidence which suffices for proof of a particular fact until contradicted and overcome, as it may be, by other evidence, direct or indirect.' " (*People v. Van Gorden* (1964) 226 Cal.App.2d

634, 636–637 [38 Cal.Rptr. 265], quoting 18 Cal.Jur.2d, Evidence, § 13, p. 435.) Once the moving party has established the existence of the arbitration agreement, the burden shifts to the party opposing arbitration to establish, by a preponderance of the evidence, the factual basis for any defense to enforcement. (*Rosenthal, supra,* 14 Cal.4th at p. 413.)

*Defendants' Prima Facie Case*

Reviewing the arbitration provision at issue here, defendants provided prima facie evidence in the form of the insurance policy containing the provision. Quoted in full above, it states in relevant part that "Any dispute arising out of this policy will be submitted to and settled by arbitration . . . ." Plaintiffs admit the existence of the policy through Dr. Winokur's declaration, and implicitly through their undisputed acceptance of policy benefits.

Further, we find that the arbitration provision is clear and conspicuous. It is included in the policy's table of contents as "Arbitration of Disputes with Us." In the policy itself, it is the second provision of the "General Conditions" section of the policy. It is printed in the same typeface as the rest of the document, and the heading is underlined and in capital letters. Under the law pertaining to insurance contracts, an insurance policy limitation is conspicuous if "it is positioned and printed in a form which adequately attracts the reader's attention to the limitation. [Citation.]" (*Feurzeig v. Insurance Co. of the West* (1997) 59 Cal.App.4th 1276, 1283 [69 Cal.Rptr.2d 629].) Given the existence of a valid insurance policy (e.g., a contract) containing a clear and conspicuous arbitration provision, we find that defendants have met their burden under *Rosenthal* to establish prima facie evidence of an agreement to arbitrate. (*Rosenthal, supra,* 14 Cal.4th at p. 413.)

*Consent to Arbitrate*

If the arbitration clause is to be found invalid, it is up to plaintiffs to establish a defense to the provision's enforcement. Plaintiffs' primary claim is that they never consented to an arbitration provision. Dr. Winokur's declaration states that "At no time did anyone inform me that the [HealthPro] professional liability policies would include an arbitration clause. I was not aware and did not expect that the policies would include an arbitration clause. I had no reason to suspect that the policies would include an arbitration clause. Neither I nor any agent or representative of MVEMA ever signed or initialed anything consenting to arbitration of disputes arising out of the policies."

In California, we adhere to the objective theory of contract law. Under that theory, " '[i]t is the objective intent, as evidenced by the words of

the contract, rather than the subjective intent of one of the parties, that controls interpretation' [citation]." (*Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.* (2003) 109 Cal.App.4th 944, 956 [135 Cal.Rptr.2d 505].)

■ Plaintiffs' argument regarding Dr. Winokur's lack of knowledge ignores the objective theory of contract law. Further, if valid, it would permit any party to a contract to avoid a disadvantageous provision by claiming that they were not aware it existed. That, however, is not the law. ■ " ' " 'It is a general rule that the receipt of a policy and its acceptance by the insured without an objection binds the insured as well as the insurer and *he cannot thereafter complain that he did not read it or know its terms.* It is a duty of the insured to read his policy.' " [Citations.]' [Citation.]" (*Chase v. Blue Cross of California* (1996) 42 Cal.App.4th 1142, 1155 [50 Cal.Rptr.2d 178]; see also *Fields v. Blue Shield of California* (1985) 163 Cal.App.3d 570, 578 [209 Cal.Rptr. 781] (*Fields*) [insured has duty to read policy and is bound by all of its clear and conspicuous provisions]; *Malcom v. Farmers New World Life Ins. Co.* (1992) 4 Cal.App.4th 296, 304, fn. 6 [5 Cal.Rptr.2d 584] ["insured is 'bound by clear and conspicuous provisions in the policy even if evidence suggests that the insured did not read or understand them.' "].)

Most of the cases in this area involve oral representations that differ from a policy's language, yet they are nonetheless instructive. In *Hadland v. NN Investors Life Ins. Co.* (1994) 24 Cal.App.4th 1578 [30 Cal.Rptr.2d 88], the plaintiffs sought to replace their health insurance policy with a less expensive one. They contacted an agent, who told them the defendant's policy was " 'as good if not better' " than their old policy. They purchased the policy without reading it. As it turned out, while the policy was less expensive, it did not cover certain medical bills that the plaintiffs thought would be covered. (*Id.* at p. 1581.) The court noted that had the plaintiffs read their policy, they would have discovered its limitations. The representation that the defendant's policy was " 'as good if not better' " than their old policy was "patently at odds with the express provisions" of the policy. (*Id.* at p. 1589.) The court concluded that the plaintiffs, "having failed to read the policy and having accepted it without objection, cannot be heard to complain it was not what they expected. Their reliance on representations about what they were getting for their money was unjustified as a matter of law." (*Ibid.*, fn. omitted.) The insured will be " ' "bound by clear and conspicuous provisions in the policy," ' " even if the insured did not read or understand those provisions. (*Id.* at p. 1586.)

Similarly, in *Hackethal v. National Casualty Co.* (1987) 189 Cal.App.3d 1102 [234 Cal.Rptr. 853], the plaintiff purchased a " 'Defendants Reimbursement Policy.' " The promotional brochure stated that the policy would pay the

insured for time spent in court as a defendant and would cover any suit involving professional acts. It also cautioned that complete details of the insurance were contained in the policy. (*Id.* at p. 1106.) The defendant's agent made various representations about the policy but never said that it would provide coverage for time spent in administrative hearings before a disciplinary agency. (*Id.* at pp. 1106–1107.) The policy itself specified that it would only pay for time spent in court for " '*the trial of a civil suit for damages against the insured* alleged to have been caused by malpractice in the practice of the profession of the insured . . . .' " (*Id.* at p. 1107.) The plaintiff was charged with misconduct and required to attend administrative hearings before the Board of Medical Quality Assurance. He made a claim for time spent at the hearings, and the defendant denied coverage. (*Id.* at p. 1108.)

The court upheld a directed verdict on the plaintiff's fraud cause of action. It noted that nothing in the promotional brochure or the representations of the defendant's agent as to the policy was in direct conflict with the policy or misleading as to the terms of the policy. Under these circumstances, the court held, any reliance the plaintiff might have had on the agent's statements in forming a belief that attendance at administrative hearings was covered "was *unjustifiable* as a matter of law." (*Hackethal v. National Casualty Co., supra,* 189 Cal.App.3d at p. 1111.)

The same general principle applies here. Failing to read a policy (or its table of contents) is not sufficient reason to hold a clear and conspicuous policy provision unenforceable. To hold otherwise would turn both contract and insurance law on its head. Insurers are not required to sit beside a policy holder and force them to read (and ask if they understand) every provision in an insurance policy. Nor are policy holders permitted to accept the benefits under the policy while denying the existence of inconvenient terms.

The cases that plaintiffs rely upon are either inapposite or readily distinguishable. They cite *Badie v. Bank of America* (1998) 67 Cal.App.4th 779 [79 Cal.Rptr.2d 273] (*Badie*), a case in which the court held that "bill stuffers" informing customers of a change to their customer agreement to include an arbitration clause were unenforceable. The court held that the bank's procedure—relying on its ability to change the terms of the customer agreement by giving notice—would "dispense with the requirement for a clear and unmistakable indication that the customer intended to waive the right to a jury trial." (*Id.* at p. 806.) But *Badie* is inapplicable here. This case does not involve a change to an existing contract which previously had no arbitration provision—an arbitration agreement of some sort had been present in every policy between plaintiffs and defendants since 2002. For the same reasons, *Long v. Fidelity Water Systems, Inc.* (N.D.Cal., May 26, 2000, No. C-97-20118 RMW) 2000 U.S.Dist. Lexis 7827, involving similar facts, is also inapposite.

*Purported Need to Call Special Attention to Arbitration Provision*

Plaintiffs cite *Haynes v. Farmers Ins. Exchange* (2004) 32 Cal.4th 1198 [13 Cal.Rptr.3d 68, 89 P.3d 381] (*Haynes*) and *Fields, supra*, 163 Cal.App.3d 570, for the proposition that insurers must call special attention to any unusual or unfair language in an insurance policy. *Haynes* involved a permissive user provision that Farmers attempted to use to limit coverage. (*Haynes, supra*, 32 Cal.4th at p. 1205.) *Fields* involved Blue Shield's refusal to pay for psychological treatment. (*Fields, supra*, 163 Cal.App.3d at p. 576.)

█ We note that neither case involves an arbitration provision, and we question the premise that an arbitration provision qualifies as unusual or unfair language. In *Haynes*, the Supreme Court specifically referred to an insurer attempting to " 'escape its basic duty to insure by means of an exclusionary clause that is unclear.' " (*Haynes, supra*, 32 Cal.4th at p. 1204.) That is not the case with an arbitration provision, which does not impact the basic duty to insure. But even if we assume that an arbitration provision does qualify as unusual or unfair language, it is enforceable if it is "conspicuous, plain and clear" in the policy itself. (*Id.* at p. 1205.) The court does not hold that disclosure outside the policy is required. The provision here easily fills any such requirement. It is conspicuous in both the table of contents and the policy itself, and clearly explained in language that is understandable to a layperson.

The other cases plaintiffs cite on this point are similarly inapposite. (*Davis v. Blue Cross of Northern California* (1979) 25 Cal.3d 418, 424–425 [158 Cal.Rptr. 828, 600 P.2d 1060] [holding that Blue Cross waived right to arbitrate by deliberately failing to advise insured of availability of and procedure for initiating arbitration]; *Wheeler v. St. Joseph Hospital* (1976) 63 Cal.App.3d 345 [133 Cal.Rptr. 775] [arbitration clause not enforceable when signed by patient upon admission to hospital; patient had no choice but to accept and clause was too complex for layperson to understand].)

*Changes to 2004 Policy*

Plaintiffs next argue that the arbitration clause is not binding on them because it was "redrafted" when the coverage was renewed in 2004. Given Dr. Winokur's averment that he was never aware of *any* arbitration provision before the instant lawsuit was filed, this argument is somewhat confusing as to its practical import. In any event, it is meritless. Defendants provided notice of the change in the policy through the language of the policy itself, as contemplated in *Haynes*. Plaintiffs cite no authority for the proposition that defendants were required to call attention to the different arbitration language outside the policy itself. The only case plaintiffs do cite on this point does not

address changes to an arbitration clause. (*Beynon v. Garden Grove Medical Group* (1980) 100 Cal.App.3d 698 [161 Cal.Rptr. 146].) Even if we agreed, for some reason, that the changes to the arbitration provision should have been called to plaintiffs' attention, it would not require us to hold that the entire provision is unenforceable; rather, the earlier version should be enforceable in such an instance. (See *Fields, supra,* 163 Cal.App.3d at p. 579 ["[A]n insurance company is bound by a greater coverage in an earlier policy when a renewal policy is issued but the insured is not notified of the specific reduction in coverage."].) Using analogous reasoning, the earlier version of the arbitration clause would still apply.

*Unconscionability*[4]

■ Plaintiffs next argue that the arbitration provision is unenforceable. As the Supreme Court has noted, "under both federal and California law, arbitration agreements are valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract. [Citations.]" (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 98 [99 Cal.Rptr.2d 745, 6 P.3d 669], fn. omitted (*Armendariz*).) Unconscionability is one such ground. (Civ. Code, § 1670.5, subd. (a).)

■ Plaintiffs, as the party opposing arbitration, have the burden of proving the arbitration provision is unconscionable. (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972 [64 Cal.Rptr.2d 843, 938 P.2d 903].) Unconscionability includes both substantive and procedural elements. (*Stirlen v. Supercuts, Inc.* (1997) 51 Cal.App.4th 1519, 1531 [60 Cal.Rptr.2d 138].) Procedural unconscionability addresses the manner in which agreement to the disputed term was sought or obtained, such as unequal bargaining power between the parties and hidden terms included in contracts of adhesion. (*24 Hour Fitness, Inc. v. Superior Court* (1998) 66 Cal.App.4th 1199, 1212–1213 [78 Cal.Rptr.2d 533].) Substantive unconscionability addresses the impact of the term itself, such as whether the provision is so harsh or oppressive that it should not be enforced. (*Id.* at p. 1213.) These elements, however, need not be present to the same degree. "[T]he more substantively

---

[4] We invited the parties to provide their comments on the recent United States Supreme Court case, *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. ___ [179 L.Ed.2d 742, 131 S.Ct. 1740] (*AT&T*). Defendants appear to argue that *AT&T* essentially preempts all California law relating to unconscionability. We disagree, as the case simply does not go that far. General state law doctrine pertaining to unconscionability is preserved unless it involves a defense that applies "only to arbitration or that derive[s] [its] meaning from the fact that an agreement to arbitrate is at issue." (*Id.* at p. ___ [131 S.Ct. at p. 1746].) This simply does not apply here.

oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." (*Armendariz, supra*, 24 Cal.4th at p. 114.)

■ We first address procedural unconscionability. Procedural unconscionability focuses on the manner in which the disputed clause is presented to the party in the weaker bargaining position. "The procedural element of an unconscionable contract generally takes the form of a contract of adhesion, ' "which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." ' [Citation.]" (*Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064, 1071 [130 Cal.Rptr.2d 892, 63 P.3d 979].) The parties exchange arguments on the status of a risk retention group and reciprocal insurer versus a traditional insurance company to shed light on whether the insurance policy should be considered an adhesion contract, and therefore procedurally unconscionable. Ultimately, however, we need not wade through this statutory tangle, because even if the provision is procedurally unconscionable, it fails the substantive unconscionability test.

■ Substantive unconscionability addresses the fairness of the term in dispute. It "traditionally involves contract terms that are so one-sided as to 'shock the conscience,' or that impose harsh or oppressive terms." (*24 Hour Fitness, Inc. v. Superior Court, supra*, 66 Cal.App.4th at p. 1213.) Plaintiffs focus on the changes made to the 2004 policy, without addressing the basic provision that arbitration was to be the means for resolving disputes. We find that this *fundamental provision* regarding arbitration is not substantively unconscionable.

The specific provisions that plaintiffs raise—regarding arbitration in San Francisco, the even split of the cost, and the nonarbitrability of discretionary decisions—can be the subject of a motion to sever before the trial court if the parties cannot reach agreement on the terms of arbitration. (Civ. Code, § 1670.5, subd. (a).) Although we may decide this issue as a matter of first impression (see *Higgins v. Superior Court* (2006) 140 Cal.App.4th 1238, 1251 [45 Cal.Rptr.3d 293]), given the relative lack of factual development as to these issues,[5] we believe that deference to the trial court would better serve the ends of justice.

---

[5] For example, although plaintiffs assert that arbitration in San Francisco would be inconvenient, the record does not provide a factual basis for asserting that it would be so inconvenient as to be unconscionable, based on the estimated length of the arbitration and other pertinent facts. Plaintiffs are entitled to at least a chance to establish the relevant foundational facts in the trial court, if they so choose.

In sum, none of the reasons offered by plaintiffs serve as a valid defense to enforceability of the arbitration provision as contemplated by *Rosenthal.* Thus, we find the provision valid and enforceable.

### III

### DISPOSITION

The court's order denying arbitration is reversed and the case is remanded for the trial court to enter a new order granting the motion to compel arbitration. Defendants are entitled to their costs on appeal.

O'Leary, Acting P. J., and Fybel, J., concurred.