Lavern ROBINSON, Respondent,

v.

TITLE LENDERS, INC., d/b/a Missouri Payday Loans, Appellant.

No. SC 91728.

Supreme Court of Missouri, En Banc.

March 6, 2012.

John Campbell, John Simon, Erich Vieth, The Simon Law Firm, St. Louis, MO, for Robinson.

Claudia Callaway, Katten Muchin Rosenman LLP, Washington, D.C., Jane E. Dueker, Cicely I. Lubben, Stinson Morrison Hecker LLP, St. Louis, MO, for Title Lenders.

MARY R. RUSSELL, Judge.

At issue in this case is whether a consumer arbitration agreement containing a class action waiver is unconscionable and, therefore, unenforceable. Title Lenders, Inc., a payday loan company, argues that its arbitration agreement containing a class waiver is enforceable and should result in the dismissal of a lawsuit brought by Lavern Robinson (Borrower). Borrower seeks to have the arbitration provision or its class waiver declared unenforceable so that she can proceed with a class action suit or class arbitration against Title Lenders.

The trial court found that Title Lenders' arbitration agreement is unconscionable

and unenforceable because its class waiver deprives borrowers of a meaningful remedy. Title Lenders appeals, and its appeal presents the issue of how the United States Supreme Court's recent decision in *AT & T Mobility LLC v. Concepcion,* — U.S. ——, 131 S.Ct. 1740, 179 L.Ed.2d 742 (2011), applies in this case.[1] *Concepcion* held that the Federal Arbitration Act (FAA) preempted a California judicial rule that deemed unconscionable most class arbitration waivers in consumer contracts. *See* 131 S.Ct. at 1746 (noting that the question the court was addressing was whether section 2 of the FAA preempted California's *"Discover Bank* rule," which classified "most collective-arbitration waivers in consumer contracts as unconscionable").

This Court finds that *Concepcion* instructs that the trial court erred in finding that Title Lenders' arbitration agreement was unconscionable based on its class waiver. *Concepcion* indicates that, in light of the FAA's section 2 "saving clause," the trial court instead should have adjudicated whether the arbitration agreement was enforceable in light of Borrower's evidence relevant to her claims regarding ordinary state-law principles that govern contracts but that do not single out or disfavor arbitration. For these reasons, the trial court's judgment is reversed.

Because the trial court has not yet adjudicated Borrower's unconscionability claims that are not related to the arbitration agreement's class waiver, this matter is remanded to the circuit court for further consideration in light of *Concepcion* and this opinion.

## I. Background

From September 2005 to September 2006, Borrower entered into 13 separate loan agreements with Title Lenders. Borrower does not contest that each of these agreements was approved by the Missouri Division of Finance and included all necessary disclosures under state and federal law. Each of the loan agreements signed by Borrower contained Title Lenders' standard arbitration agreement language. The arbitration provisions explained arbitration, noted that some claims still might be resolved in small claims "court," provided that arbitrations would be administered by the American Arbitration Association, and indicated that Title Lenders would cover the filing fees and costs for arbitration when "it would be unfair or burdensome" for the borrower to pay. The arbitration agreement indicated that Borrower was waiving a jury trial or access to a class action, but it did not otherwise contain a waiver of any claims, remedies, or damages that would be available to Borrower. The following language in the arbitration agreement noted the class waiver (bolded and capitalized emphasis appears in the agreement, underlined emphasis added by this Court):

> Only disputes involving you and us may be addressed in the arbitration. *The arbitration may not address any dispute on a "class action" basis. This means that the arbitration may not address disputes between you and us.*

> The arbitrator shall have the authority to award any legal or equitable remedy or relief that a court in the State of Missouri could order or grant. The arbitrator, however, is not authorized to change or alter the terms of this Agreement or to make any award that would extend to any loan other than your own.

---

1. This Court, acting on its own motion, took transfer of this case prior to its disposition by the court of appeals. Jurisdiction is vested in this Court pursuant to Mo. CONST. art. V, sec. 10.

BY AGREEING TO ARBITRATE ANY DISPUTE, NEITHER YOU NOR WE WILL HAVE THE RIGHT TO LITIGATE THAT DISPUTE IN COURT, OR TO HAVE A JURY TRIAL ON THAT DISPUTE, OR ENGAGE IN DISCOVERY PROCEEDINGS EXCEPT AS PROVIDED FOR ABOVE OR IN THE ARBITRATION RULES. FURTHER, *YOU WILL NOT HAVE THE RIGHT TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF ANY CLASS PERTAINING TO ANY DISPUTE SUBJECT TO ARBITRATION.* THE ARBITRATOR'S DECISION WILL BE FINAL AND BINDING, EXCEPT TO THE EXTENT IT IS SUBJECT TO REVIEW IN ACCORDANCE WITH APPLICABLE LAWS GOVERNING ARBITRATION AWARDS, OTHER RIGHTS THAT YOU OR WE WOULD HAVE IN COURT MAY ALSO NOT BE AVAILABLE IN ARBITRATION.

Borrower signed each of the lending contracts, including the arbitration provisions, and her signature was noted to indicate her understanding and acceptance of all terms in the agreement. Borrower attested in a deposition that she never was threatened, rushed, pressured, or forced into entering the agreements with Title Lenders. She also indicated, however, that she never read the arbitration clauses when she signed the loan contracts.

■ In October 2006, Borrower sued Title Lenders, alleging that its lending practices violated the Missouri Merchandising Practices Act and certain regulatory statutes. Borrower sought to represent herself in the suit, as well as a putative class of borrowers who also had obtained payday loans using Title Lenders' loan agreement form. Title Lenders, asserting the arbitration provisions signed by Borrower, moved to stay Borrower's suit and to compel her to pursue her claims via individual arbitration or in the small claims division of the circuit court. Borrower responded that Title Lenders' class waiver in its loan contract arbitration provisions rendered its arbitration agreement unconscionable and, therefore, unenforceable.[2] Borrower also asserted that Title Lenders' class waiver would effectively immunize it from suits because attorneys would not agree to handle borrowers' cases unless a class action was available. She argued that the class waiver was an exculpatory clause that was unenforceable because it was not clear and unambiguous.[3]

■ Arguments and briefs were presented to the trial court. Evidence was presented regarding Borrower's contentions that Title Lenders' arbitration agreement was unconscionable. Borrower's evidence sought to emphasize her lack of sophistication and her lack of understanding of the agreement. She also raised complaints about the agreement's print size, location, and clarity, as well as the

2. "Unconscionability has two aspects: procedural unconscionability and substantive unconscionability. Procedural unconscionability deals with the formalities of making the contract, while substantive unconscionability deals with the terms of the contract itself." *State ex rel. Vincent v. Schneider,* 194 S.W.3d 853, 858 (Mo. banc 2006) (noting that "[p]rocedural unconscionability focuses on such things as high pressure sales tactics, unreadable fine print, or misrepresentation among other unfair issues in the contract formation process," whereas "[s]ubstantive unconscionability means an undue harshness in the contract terms"). Missouri does not permit an unconscionable contract or clause of a contract to be enforced. *Id.*

3. A clause exculpating a party from liability must be clear and unambiguous. *See Alack v. Vic Tanny Int'l of Mo., Inc.,* 923 S.W.2d 330, 334 (Mo. banc 1996).

high rate of interest available under the loan contract. Title Lenders highlighted that Borrower was not coerced or pressured into entering the agreement but rather voluntarily signed it 13 times despite her admissions that she did not read or understand it.[4] Title Lenders' evidence also included that Borrower admitted to preferring to obtain financing from Title Lenders, though she had other sources of financing available from other lenders that did not require her to sign an arbitration agreement.

Evidence also was presented regarding Borrower's arguments that the arbitration agreement and its class waiver effectively exculpated Title Lenders from suits. Borrower's evidence included the testimony of two lawyers who opined that consumer lawyers would not take a case like Borrower's case unless it could be pursued as a class action. Title Lenders countered by arguing that there was no evidence that its borrowers had been unsuccessful in retaining counsel to pursue individual claims. Title Lenders sought to compel individual arbitration, and Borrower sought to have the class waiver stricken so she could proceed with class arbitration or a class action suit.

In March 2009, the trial court granted Title Lenders' motion to stay Borrower's court case, finding: "The Court has reviewed the evidence and the submissions of the parties and finds that the present dispute is arbitrable … [and] must be stayed for arbitration." But noting the "unequal bargaining position between the parties when the underlying contract was entered into," the court also found: "[T]he terms of the Arbitration Clause are unduly harsh and not commercially reasonable in the prohibition of class actions and the ability to arbitrate a class. As such, the Arbitration Clause is both procedurally and substantively unconscionable to the extent that it prohibits class actions." The trial court's March 2009 order discussed that the lack of class availability would leave Borrower and similarly situated consumers without a practical remedy for their relatively small claims. It stated that the class waiver provisions are unconscionable insofar as their "practical effect affords [Title Lenders] immunity" from suit. The trial court additionally found that the class waiver is "exculpatory and unenforceable because it is not clear and unambiguous." The trial court struck the class waiver provisions from the arbitration agreement, but it ordered enforcement of the other arbitration provisions absent the class waiver.

Titled Lenders appealed the March 2009 judgment, but its initial appeal was dismissed and the case was remanded because the trial court had not addressed one of Borrower's declaratory-relief counts. While the case was pending on remand, the United States Supreme Court held that class arbitration could not be compelled absent express consent by the parties. *See Stolt–Nielsen S.A. v. Animal-Feeds Int'l Corp.*, —— U.S. ——, 130 S.Ct. 1758, 176 L.Ed.2d 605 (2010). Borrower moved that the trial court, in light of *Stolt–*

---

**4.** The law is clear that a signer's failure to read or understand a contract is not, standing alone, a defense to the contract. *See Sanger v. Yellow Cab Co., Inc.*, 486 S.W.2d 477, 481 (Mo. banc 1972) ("The rule is that the one who signs a paper, without reading it, if he is able to read and understand, is guilty of such negligence in failing to inform himself of its nature that he cannot be relieved from the obligation contained in the paper thus signed, unless there was something more than mere reliance upon the statements of another as to its contents[.]" (internal quotations omitted)); *see also Repair Masters Constr., Inc. v. Gary*, 277 S.W.3d 854, 858 (Mo.App.2009) ("The failure to read a document prior to signing it is not a defense, and does not make a contract voidable, absent fraud.").

*Nielsen,* deny Title Lenders' motion to stay the suit, and Title Lenders moved that the trial court instead modify its order to grant the stay.

In a judgment entered in January 2011, the trial court found that it was precluded from ordering arbitration on a class basis but rather only could compel individual arbitration. In support of this holding, the trial court cited *Stolt–Nielsen* and this Court's opinion in *Brewer v. Missouri Title Loans, Inc.,* 323 S.W.3d 18 (Mo. banc 2010) *(Brewer I), vacated, Missouri Title Loans, Inc. v. Brewer,* — U.S. —, 131 S.Ct. 2875, 179 L.Ed.2d 1184 (2011),[5] wherein this Court had found unconscionable and unenforceable a class waiver that was included in an arbitration agreement that was part of a title loan contract. *See Brewer I,* 323 S.W.3d at 20–24. *Brewer I* had emphasized that individual arbitration, as opposed to class arbitration, would result in the title loan borrower being denied a remedy against the allegedly predatory title loan lender. *See id.*

The trial court's January 2011 judgment again highlighted its previous concerns that the class waiver is unconscionable, noting that enforcement of the class waiver would "effectively depriv[e] [Borrower] of any meaningful remedy." And the trial court accordingly vacated its previous stay and overruled Title Lenders' motions to stay and compel arbitration. Title Lenders appeals.

## II. Arguments on Appeal

Title Lenders contends that the trial court erred in refusing to enforce Title Lenders' arbitration agreement. It argues that the arbitration agreement is not unconscionable, and it contends that the class waiver is not an unenforceable exculpatory clause. Title Lenders also maintains that *Concepcion* instructs that the trial court erred in concluding that the class waiver rendered the arbitration agreement unconscionable. Title Lenders requests reversal of the trial court's judgment and asks that the case be remanded with instructions that the trial court stay Borrower's suit and order her to seek redress for her claims through individual arbitration.

## III. Standard of Review

 The trial court's judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Woods v. QC Fin. Servs., Inc.,* 280 S.W.3d 90, 94 (Mo.App. E.D.2008). "Missouri contract law applies to determine whether the parties have entered a valid agreement to arbitrate." *State ex rel. Vincent v. Schneider,* 194 S.W.3d 853, 856 (Mo. banc 2006). Whether the trial court should have granted a motion to compel arbitration is a question of law that this Court reviews *de novo. Id.*

## IV. Relevant Caselaw

### A. *Brewer I*

The trial court's judgment underlying this appeal reflects this Court's previous

**5.** In light of its decision in *Concepcion,* the United States Supreme Court granted certiorari and vacated and remanded this Court's judgment in *Brewer I. Mo. Title Loans, Inc. v. Brewer,* — U.S. —, 131 S.Ct. 2875, 179 L.Ed.2d 1184 (2011). Concurrent to this Court's consideration of Borrower's case, a different panel of this Court undertook consideration of how *Concepcion* applies to this

Court's previous decision in *Brewer I.* This Court's post-remand decision of *Brewer I* is issued concurrent to this opinion. *Brewer v. Mo. Title Loans, Inc.,* 364 S.W.3d 486 (Mo. banc 2012) (No. 90647, decided March 6, 2012) *(Brewer II ).* Application of *Concepcion* to this case is the central reason this Court took transfer of this appeal prior to an opinion by the court of appeals.

holding in *Brewer I*, wherein this Court found a class waiver unconscionable and declared an arbitration agreement unenforceable after discussing that individual arbitration, as opposed to class arbitration, would effectively result in the borrower being denied a remedy. *See* 323 S.W.3d at 20–24.

*Brewer I* considered the "interplay" between the FAA and a title loan borrower's state-law unconscionability defenses to the underlying arbitration agreement. *Id.* at 20. *Brewer I*'s holding reflected the Supreme Court's holding in *Stolt–Nielsen* that "where an arbitration agreement is silent with respect to class arbitration, the parties cannot be compelled to submit the dispute to class arbitration." 323 S.W.3d at 20 (citing *Stolt–Nielsen*, 130 S.Ct. at 1774–76, for the premise that "arbitration is fundamentally a matter of consent ... limited by the scope of the arbitration agreement"). *Brewer I* concluded that, insofar as "*Stolt–Nielsen* requires an affirmative consent to class arbitration before it may be compelled," no party could be forced to proceed with class arbitration. 323 S.W.3d at 21. But *Brewer I* agreed with the trial court's underlying holding

that individual arbitration should also not be compelled, as the class arbitration waiver at issue was unconscionable and unenforceable. *See* 323 S.W.3d at 20–21.

*Brewer I* found that the class arbitration waiver in that case was both procedurally and substantively unconscionable. *Id.* at 22–23. And it rejected the lender's contention that the class waiver was a valid and permissible exculpatory clause under Missouri law. *Id.* at 24. *Brewer I* stated: "Given the FAA's prohibition of class arbitration under the facts of this case and the fact that the unconscionable aspects of the arbitration contract are a result of the class arbitration waiver, the appropriate remedy is to strike the arbitration agreement in its entirety." *Id.*

The United States Supreme Court, however, granted certiorari in *Brewer I* in May 2011, and it summarily vacated this Court's judgment and ordered that this Court reconsider *Brewer I* in light of *Concepcion*. *Mo. Title Loans, Inc. v. Brewer*, —— U.S. ——, 131 S.Ct. 2875, 179 L.Ed.2d 1184 ("Judgment vacated, and case remanded to Supreme Court of Missouri for further consideration in light of [*Concepcion*.]")[6]

---

**6.** In addition to *Brewer I*, the United States Supreme Court has cited *Concepcion* as a reason for granting certiorari and vacating and remanding five other decisions: *Branch Banking & Trust v. Gordon*, —— U.S. ——, 132 S.Ct. 577, 181 L.Ed.2d 418 (2011) (an 11th Circuit case in which the vacated opinion had held that a class action waiver in a consumer contract was unconscionable and in which the consumer had limited viable options for relief; post-*Concepcion* decision pending); *Sonic–Calabasas A, Inc. v. Moreno*, —— U.S. ——, 132 S.Ct. 496, 181 L.Ed.2d 343 (2011) (a Supreme Court of California case addressing arbitration provisions found to be substantively unconscionable and raising public policy concerns; post-*Concepcion* decision pending); *Affiliated Computer Servs., Inc. v. Fensterstock*, —— U.S. ——, 131 S.Ct. 2989, 180 L.Ed.2d 818 (2011) (student loan consumer case pending in the 2nd Circuit for

determinations about the arbitrability of the issues post-*Concepcion*); *Cellco P'ship v. Litman*, —— U.S. ——, 131 S.Ct. 2872, 179 L.Ed.2d 1184 (2011) (along with *Litman v. Cellco P'ship*, —— U.S. ——, 131 S.Ct. 2873, —— L.Ed.2d —— (2011)) (3rd Circuit case determining that, after *Concepcion*, New Jersey law as to unconscionability was preempted by the FAA because the state law impermissibly sought to impose class arbitration even when it was not contracted—*Litman v. Cellco P'ship*, 655 F.3d 225, 231 (3d Cir. 2011)); *Sonic Auto., Inc. v. Watts*, —— U.S. ——, 131 S.Ct. 2872, 179 L.Ed.2d 1184 (2011) (post-*Concepcion*, the Supreme Court of South Carolina reinstated its vacated opinion in this case, as it found that the FAA preemption issues were not preserved; the opinion had determined that class waivers applicable to automobile buyers violated the state's law and public policy protective of

Now that this Court's arbitration class waiver precedent in *Brewer I* has been vacated by *Concepcion*, this Court cannot decide Title Lenders' appeal without first determining how *Concepcion* impacts the enforceability of Title Lenders' arbitration agreement and, specifically, its class waiver.

## B. *Concepcion*

In *Concepcion*, the United States Supreme Court held that the FAA preempts California's "*Discover Bank* rule," which "classif[ied] most collective-arbitration waivers in consumer contracts as unconscionable." *See Concepcion*, 131 S.Ct. at 1751–52.[7]

Until *Concepcion*, *Discover Bank* had provided for California courts:

> [Not all] class action waivers [in arbitration agreements] are necessarily unconscionable. But when the waiver is found in a consumer contract of adhesion in a setting in which disputes between the contracting parties predictably involve small amounts of damages, and when it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money, then, at least to the extent the obligation at issue is governed by California law, the waiver becomes in practice the exemption of the party "from responsibility for [its] own fraud, or willful injury to the person or property of another." [California Civ. Code, sec. 1668.] Under these circumstances, such waivers are unconscionable under California law and should not be enforced.

*Discover Bank v. Superior Court*, 36 Cal.4th 148, 30 Cal.Rptr.3d 76, 113 P.3d 1100, 1110 (2005), *abrogated by Concepcion*, 131 S.Ct. 1740. *Concepcion* declared that California's "*Discover Bank* rule" was preempted by the FAA because the rule was "an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" in enacting the FAA. 131 S.Ct. at 1753 (internal quotations omitted).

In finding the "*Discover Bank* rule" untenable under the FAA, *Concepcion* highlighted that the FAA was enacted to protect arbitration agreements from judicial hostility toward arbitration. 131 S.Ct. at 1745. *Concepcion* discussed that the application of the "*Discover Bank* rule" had resulted in courts ordering class arbitrations even when class arbitration was not mutually consented to by the parties[8] or when class arbitration was not more beneficial to consumers. *See Concepcion*, 131 S.Ct. at 1750–52.

*Concepcion* reasoned that the "*Discover Bank* rule," as it was applied by the courts, violated the spirit of the FAA by undermining the FAA's intent to place arbitration agreements on equal footing with other contracts and to enforce arbitration agreements by their terms. *See Concepcion*, 131 S.Ct. at 1745–46. The Supreme Court emphasized that the FAA places

automobile buyers' rights to bring class suits—*see Herron v. Century BMW*, 387 S.C. 525, 693 S.E.2d 394, 400 (2010), *vacated sub nom. Sonic Auto., Inc. v. Watts*, —— U.S. ——, 131 S.Ct. 2872, 179 L.Ed.2d 1184, *opinion reinstated* 395 S.C. 461, 719 S.E.2d 640, 645 (2011)).

7. The opinion of the Supreme Court was authored by Justice Scalia, who was joined by Chief Justice Roberts and Justices Kennedy, Alito, and Thomas. Justice Thomas also authored a concurring opinion.

8. The Supreme Court previously had declared that mutual consent was necessary to compel class arbitration. *See Stolt–Nielsen*, 130 S.Ct. at 1775–76.

arbitration agreements on equal footing with other contracts because the FAA's "saving clause" "preserves generally applicable contract defenses." *Id.* at 1748. The "saving clause" allows an arbitration agreement to be declared unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract." *See* 9 U.S.C. sec. 2. And, as such, the FAA's "saving clause" permits arbitration agreements "to be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability, but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Concepcion,* 131 S.Ct. at 1746 (internal quotations omitted).[9]

*Concepcion* concluded that the *"Discover Bank* rule" was preempted by the FAA because "nothing [in the FAA's 'saving clause'] suggests an intent to preserve state-law rules that stand as an obstacle to the accomplishment to the FAA's objectives." *Id.* at 1748. The Supreme Court noted that, in effect, the California courts' application of the *"Discover Bank* rule" resulted in the invalidation of most arbitration agreement class waivers and compelled class arbitrations. *See id.* at 1750 (noting that California's *"Discover Bank* rule" interferes with arbitration because it "does not *require* classwide arbitration, [but] allows any party to a consumer contract to demand it *ex post* " when there is an adhesion contract, which covers most consumer contracts). The *"Discover Bank* rule" disfavored the terms of arbitration agreements as they were agreed to by the parties, and it impermissibly stretched the FAA's "saving clause" considerations by applying California's state-law unconscionability analysis in a way that singled out and disfavored arbitration agreements. *Id.* at 1747–48. *Concepcion* articulated that the application of the *"Discover Bank*

9. Justice Thomas' concurrence noted that he "reluctantly join[ed] the Court's opinion." *Concepcion,* 131 S.Ct. at 1754 (Thomas, J. concurring). His concurrence articulated his position that the FAA's section 2 "saving clause," read in light of FAA section 4, preserves for consideration only "grounds related to the making of [an arbitration] agreement." *Id.* at 1754–55 (Thomas, J. concurring) (reasoning that enforcement of an agreement to arbitrate is required unless a defense concerning the formation of the agreement applies, such as fraud, duress, or mutual mistake). He opined: "Contract defenses unrelated to the making of the agreement—such as public policy—could not be the basis for declining to enforce an arbitration clause." *Id.* at 1755 (Thomas, J. concurring). And he articulated that the *"Discover Bank* rule" was preempted by the FAA and should not be used to invalidate an arbitration agreement because the rule involved a refusal to enforce an agreement based on public-policy concerns about exculpatory provisions, which had nothing to do with whether the agreement itself was "properly made." *See id.* at 1756 (Thomas, J. concurring). Justice Thomas noted past Supreme Court cases that had applied defenses relevant to the *formation* of a contract. *Id.* at 1755 (Thomas, J. concurring) ("In *Doctor's Associates, Inc. v. Casarotto,* [517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996) ], this Court said that fraud, duress, and unconscionability 'may be applied to invalidate arbitration agreements without contravening [sec.] 2.' All three defenses historically concern the making of an agreement. *See Morgan Stanley Capital Group Inc. v. Public Util. Dist. No. 1 of Snohomish Cty.,* [554 U.S. 527, 547, 128 S.Ct. 2733, 171 L.Ed.2d 607 (2008) ] (describing fraud and duress as 'traditional grounds for the abrogation of [a] contract' that speak to 'unfair dealing at the contract formation stage'); *Hume v. U.S.,* [132 U.S. 406, 411, 414, 10 S.Ct. 134, 33 L.Ed. 393 (1889) ] (describing an unconscionable contract as one 'such as no man in his senses and not under delusion would make' and suggesting that there may be 'contracts so extortionate and unconscionable on their face as to raise the presumption of fraud in their inception.' (internal quotation marks omitted))").

rule" to essentially "[r]equir[e] the availability of classwide arbitration interfere[d] with [the] fundamental attributes of arbitration and thus create[d] a scheme inconsistent with the FAA." *Id.* at 1748.

*Concepcion* outlined concerns that class arbitrations can be unfair to parties who agree to individual arbitration only, potentially can disadvantage corporate defendants, and can result in unfairness to potential co-plaintiffs who remain unaware of the class proceedings. *See id.* at 1750–52. *Concepcion* reasoned that class arbitrations, in contrast to individual arbitrations, undermine arbitration hallmarks like informality and unreviewability of results. *See id.* at 1749–51. *Concepcion* expressed disfavor for any state-law rule that forced class arbitrations because "[t]he point of affording parties discretion in designing arbitration processes is to allow for efficient, streamlined procedures tailored to the type of dispute . . . [a]nd the informality of arbitral proceedings is itself desirable, reducing the cost and increasing the speed of dispute resolution." *Id.* at 1749.

In contrast to the majority opinion's concerns about class arbitration, the dissenting opinion in *Concepcion*[10] emphasized the benefits of class arbitration, especially to protect consumers with small-dollar claims that might not be remedied if class relief was unavailable. *See Concepcion,* 131 S.Ct. at 1760–61 (Breyer, J. dissenting). The majority's opinion, however, suggested that the dissent failed to recognize that the FAA preempts any state-law procedure that is inconsistent with the FAA's purposes, even if the state-law result otherwise would be desirable. *See id.,* at 1753. It also reasoned that, under the specific facts of *Concepcion,* there was limited concern that the claimants' small-dollar claims would remain unresolved even absent the availability of class arbitration. *Id.* The majority opinion noted that the arbitration agreement terms at issue in *Concepcion* were actually beneficial to the consumers, even if they did not proceed as a class. *See id.*[11]

## V. Application of *Concepcion*

 *Concepcion* instructs clearly that a court cannot invalidate an arbitration agreement on the sole basis that it

---

10. The dissent was authored by Justice Breyer and joined by Justices Ginsburg, Sotomayor, and Kagan. The dissent emphasized "federalist principles" and noted that state law should control the enforceability of contracts. *See Concepcion,* 131 S.Ct. at 1762 (Breyer, J. dissenting). The dissenting opinion concluded that the *"Discover Bank* rule" did not violate the FAA because the "saving clause" of the FAA intended to allow the states to continue to apply state contractual defenses, including unconscionability defenses, to invalidate arbitration agreements so long as the defenses were applied equally to class waivers in arbitration and in contracts. *Id.* at 1756–57 (Breyer, J. dissenting).

11. *Concepcion* discussed:

[T]he claim here was most unlikely to go unresolved. As noted earlier, the arbitration agreement provides that AT & T will pay claimants a minimum of $7,500 and twice their attorney's fees if they obtain an arbitration award greater than AT & T's last settlement offer. The District Court found this scheme sufficient to provide incentive for the individual prosecution of meritorious claims that are not immediately settled, and the Ninth Circuit admitted that aggrieved customers who filed claims would be essentially guaranteed to be made whole[.] Indeed, the District Court concluded that the Concepcions were *better off* under their arbitration agreement with AT & T than they would have been as participants in a class action, which could take months, if not years, and which may merely yield an opportunity to submit a claim for recovery of a small percentage of a few dollars.

131 S.Ct. at 1753 (internal quotations and citations to underlying district court opinions omitted).

contains a class waiver. *Id.* at 1748. As such, *Concepcion* invalidates this Court's reasoning in *Brewer I* that concluded that the unconscionable aspects of the arbitration agreement in that case were "a result of the class arbitration waiver." *See Brewer I*, 323 S.W.3d at 24; *see also Ruhl v. Lee's Summit Honda*, 322 S.W.3d 136 (Mo. banc 2010) (citing *Brewer I*'s unconscionability reasoning and invalidating an entire arbitration agreement when the class waiver was found unconscionable). *Concepcion*, however, does not require that courts simply must declare that an arbitration agreement containing a class waiver is enforceable. *Concepcion* reiterates that courts assessing the enforceability of an arbitration agreement must continue to consider the enforceability of an arbitration agreement in light of the section 2 "saving clause." *See* 131 S.Ct. at 1746–48. As such, arbitration agreements are tested through a lens of ordinary state-law principles that govern contracts, and consideration is given to whether the arbitration agreement is improper in light of generally applicable contract defenses. *See Cruz v. Cingular Wireless, LLC*, 648 F.3d 1205, 1210 (11th Cir.2011) (indicating that the FAA's section 2 "saving clause" and *Concepcion* permit the analysis of whether a class waiver in an arbitration agreement is enforceable to include consideration of whether the arbitration agreement is valid in light of generally applicable contract defenses). An arbitration agreement could be declared unenforceable if a generally applicable contract defense, such as fraud, duress, or unconscionability, applied to concerns raised about the agreement. *Cf.* 131 S.Ct. at 1746 ("saving clause permits agreements to arbitrate to be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability" (internal quotations omitted)).

Concepcion, however, will not allow an arbitration agreement to be invalidated by any defense that is applied in a way that singles out or disfavors arbitration, as *Concepcion* instructs that no state-law rule that is "an obstacle to the accomplishment of the FAA's objectives" should be applied to invalidate an arbitration agreement. *See* 131 S.Ct. at 1748; *see also Cruz*, 648 F.3d at 1210–11 (noting that *Concepcion* rejected the "*Discover Bank* rule" because it "was cast as an application of unconscionability doctrine, [but] in effect, it set forth a state policy placing bilateral arbitration categorically off-limits for certain categories of consumer fraud cases, upon the mere *ex post* demand by any consumer"). Any state-law rule testing the enforceability of an arbitration agreement cannot "interfer[e] with fundamental attributes of arbitration" or "creat[e] a scheme inconsistent with the FAA." *See Concepcion*, 131 S.Ct. at 1748. As such, post-*Concepcion*, a court should not invalidate an arbitration agreement in a consumer contract simply because it is contained in a contract of adhesion or because the parties had unequal bargaining power, as these are hallmarks of modern consumer contracts generally. *See id.* at 1750 (noting that "the times in which consumer contracts were anything other than adhesive are long past"); *Cruz*, 648 F.3d at 1215 (reasoning that, *post-Concepcion*, the fact that an arbitration agreement is contained in an adhesion contract is not alone sufficient to invalidate the agreement).

Moreover, *post-Concepcion*, courts may not apply state public policy concerns to invalidate an arbitration agreement even if the public policy at issue aims to prevent undesirable results to consumers. *See Concepcion*, 131 S.Ct. at 1753 (rejecting consumers' public policy concerns about small-dollar claims slipping

through the legal system because states "cannot require a procedure that is inconsistent with the FAA, even if it is desirable for unrelated reasons"); *see also Cruz,* 648 F.3d at 1212–13 (discussing that *Concepcion* does not permit the decision about the viability of the class waiver in the arbitration agreement to rest on sympathies for arguments that class arbitration is the best mechanism to protect the small-value claims of numerous consumers; rejecting applying Florida law in a way that would require availability of class arbitration to guard consumers against the risks that small-dollar claims will not be brought unless plaintiffs can proceed as a class; and declaring that such a state rule would be inconsistent with and preempted by the FAA).[12] Applying state-law policy considerations as the basis for invalidating an arbitration agreement is preempted by the FAA because it creates an impermissible "obstacle to the FAA's objective of enforcing arbitration agreements according to their terms." *Cruz,* 648 F.3d at 1212–13. As noted in this Court's companion opinion in *Brewer II,* this Court's conclusion that the FAA does not allow state-law policy considerations to be used to invalidate an arbitration agreement recently was confirmed by the Supreme Court's holding in *Marmet Health Care Center, Inc., v. Brown,* —— U.S. ——, 132 S.Ct. 1201, 182 L.Ed.2d 42 (2012) (reversing a state court

**12.** There are policy concerns that a class action waiver in an arbitration agreement can become a *de facto* exculpatory provision because it eliminates an incentive to detect or pursue small-value claims. But this policy concern about whether a class waiver is impermissibly exculpatory seemingly was rejected in *Concepcion,* insofar as it "observed that California's *Discover Bank* rule [had] 'its origins in California's unconscionability doctrine and California's policy against exculpation.'" *Cruz,* 648 F.3d at 1214 (citing *Concepcion,* 131 S.Ct. at 1746, for the proposition that *Concepcion* rejected the plaintiffs' policy arguments regarding whether the waiver was exculpatory).

In *Cruz,* the Eleventh Circuit refused to "reach the question of whether *Concepcion* leaves open the possibility that in some cases, an arbitration agreement may be invalidated on public policy grounds where it effectively prevents the claimant from vindicating her statutory cause of action" because the agreement at issue in *Cruz* was the same AT & T consumer-relief-favorable agreement that was upheld in *Concepcion. Cruz,* 648 F.3d at 1215. *Cruz* noted there was conflicting caselaw on the issue. *See id.* at n. 13 (citing *"Chen–Oster v. Goldman, Sachs & Co.,* [2011 WL 2671813, *3–5 (S.D.N.Y. July 7, 2011)] (denying motion for reconsideration in light of *Concepcion* of order invalidating arbitration agreement because it did not allow for class proceedings, based on conclusion that individual arbitration would preclude plaintiff from enforcing her 'substantive right under Title VII to bring a pattern or practice claim' which under governing substantive law may only be brought as a class); *but cf. Gilmer v. Interstate/Johnson Lane Corp.,* [500 U.S. 20, 32, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991),] (holding that the inability to arbitrate on a classwide basis was not an appropriate ground for refusing to enforce an arbitration provision with respect to statutory Age Discrimination in Employment Act claim)").

In a case that, like *Brewer I,* was remanded by the Supreme Court in light of its decision in *Concepcion,* the Third Circuit concluded that the FAA preempts New Jersey law that had instructed that a class action waiver in a consumer adhesion contract was unconscionable and unenforceable because it functionally exculpated the defendant from small-dollar claims. *See Litman,* 655 F.3d at 229–31 (declaring "the holding of *Concepcion* [is] both broad and clear: a state law that seeks to impose class arbitration despite a contractual agreement for individualized arbitration is inconsistent with, and therefore preempted by, the FAA, irrespective of whether class arbitration 'is desirable for unrelated reasons'") (*quoting Concepcion,* 131 S.Ct. at 1753)); *see also Black v. JP Morgan Chase & Co.,* 2011 WL 3940236 (W.D.Pa. Aug. 25, 2011) (*report and recommendation adopted by* 2011 WL 4089411 (W.D.Pa. Sept. 14, 2011) (discussing and applying the *Litman* holding in declaring that the FAA preempts Pennsylvania law that holds class action waivers in arbitration agreements are unconscionable and unenforceable).

ruling holding that the FAA did not preempt the state's public policy against predispute arbitration agreements related to personal injury and wrongful death claims against nursing homes; finding that the state court's application of a public policy rationale was contrary to *Concepcion* and the terms of the FAA; and remanding for additional findings regarding whether, absent a public policy rationale, the arbitration clause at issue was "unenforceable under state common law principles that are not specific to arbitration and pre-empted by the FAA").

## VI. Is Title Lenders' Arbitration Agreement Enforceable?

The issue to be determined in this appeal is whether the trial court erred in finding that Title Lenders' arbitration agreement was unenforceable.

 In this case, Borrower raised multiple arguments challenging the enforceability of Title Lenders' arbitration agreement based on Missouri's contract law prohibitions against unconscionable agree-

ments.[13] The trial court's judgment, however, was based solely on its determination that the arbitration agreement was unconscionable because its terms were "unduly harsh and not commercially reasonable in the prohibition of class actions and the ability to arbitrate as a class." The trial court refused to enforce Title Lenders' arbitration agreement on the basis that it contained class waiver provisions that the court determined would impermissibly deprive Borrower of a meaningful remedy.

Pursuant to *Concepcion*, the trial court clearly erred in finding that Title Lenders' arbitration agreement was unenforceable based on its class waiver. *Concepcion* instructs that, instead of limiting its unconscionability considerations to the presence of the class waiver, the trial court should have assessed whether the arbitration agreement was enforceable in light of Borrower's additional arguments regarding ordinary state-law principles that govern contracts but that do not single out or disfavor arbitration.[14]

---

13. Borrower's arguments that the arbitration agreement should not be enforced based on unconscionability included: Borrower and Title Lenders had unequal bargaining power; the contract was a take-it-or-leave-it, preprinted form contract; the arbitration agreement was "boilerplate" language and then included a class waiver on the back of the agreement; the agreement was in fine print and difficult to read; Borrower did not understand the language of the arbitration agreement and did not know the meaning of arbitration; the arbitration agreement is difficult for payday loan customers to understand; the interest rate on the loan made under the agreement could reach 515 percent; and the arbitration agreement's class waiver effectively exculpated Title Lenders from suit.

14. *See Marmet,* —— U.S. ——, 132 S.Ct. 1201 (2012) (remanding for additional findings regarding whether, absent a public policy rationale, the arbitration clause at issue in the case was "unenforceable under state common law principles that are not specific to arbitration

and pre-empted by the FAA"); *see also Mission Viejo Emergency Med. Assocs. v. Beta Healthcare Grp.,* 197 Cal.App.4th 1146, 1158, 128 Cal.Rptr.3d 330 (2011) (citing *Concepcion,* 131 S.Ct. at 1746, for the proposition that "[g]eneral state[-]law doctrine pertaining to unconscionability is preserved unless it involves a defense that applies 'only to arbitration or that derive[s] [its] meaning from the fact that an agreement to arbitrate is at issue' "). *Post–Concepcion,* Borrower's arguments that allege unconscionability relating to unequal bargaining power are undermined. *Cf. Black,* 2011 WL 3940236 (W.D.Pa. Aug. 25, 2011) (noting that "superior bargaining power alone without the element of unreasonableness does not permit a finding of unconscionability or unfairness); *see also Wallace v. Ganley Auto Grp.,* 2011 WL 2434093 (Ohio App. June 16, 2011) (discussing that in addition to an unequal bargaining position, there must be evidence that, as a result of the unequal bargaining positions of the parties, the weaker party was defrauded or coerced into agreeing to the arbitration provisions).

Because the trial court's judgment adjudicated only Borrower's claim of unconscionability based on the class waiver, it did not adjudicate Borrower's other claims of unconscionability. As such, there remain factual issues relevant to determining whether Title Lenders' arbitration agreement was properly declared unenforceable based on Borrower's arguments alleging unconscionability that remain relevant post-*Concepcion*. As the fact-finder, the trial court should assess the evidence in this case and determine if the underlying arbitration agreement is enforceable in light of *Concepcion*'s instructions.

## VII. Conclusion

For the foregoing reasons, the trial court's judgment is reversed, and the case is remanded.

TEITELMAN, C.J.,
BRECKENRIDGE, FISCHER, STITH
and PRICE, JJ., and WOLFF, Sr., J.,
concur.

DRAPER, J., not participating.